# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3058

_____

Stacey Eugene Johnson,

               Appellant,

       v.

Larry Norris, Director, Arkansas
Department of Correction,

               Appellee.

Appeal from the United States
District Court for the
Eastern District of Arkansas.

_____

Submitted: May 12, 2008
Filed: August 8, 2008

_____

Before LOKEN, Chief Judge, BYE, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Stacey Eugene Johnson was convicted of the murder of Carol Heath and sentenced to death in 1994. The Supreme Court of Arkansas reversed the conviction, *see Johnson v. Arkansas*, 934 S.W.2d 179 (Ark. 1996) ("*Johnson I*"), and the case was retried. Johnson was again convicted and sentenced to death, and a divided Supreme Court of Arkansas affirmed. *Johnson v. Arkansas*, 27 S.W.3d 405 (Ark. 2000) ("*Johnson II*"). After the state circuit court denied Johnson's petitions for post-conviction relief, the Supreme Court of Arkansas affirmed in part, but remanded the case for the limited purpose of conducting a second round of DNA testing of evidence from the murder scene. *Johnson v. Arkansas*, 157 S.W.3d 151 (Ark. 2004) ("*Johnson*

*III*"). The court subsequently acknowledged that a second round of DNA testing already had occurred, and thus affirmed the decision of the circuit court denying the petitions for post-conviction relief. *Johnson v. Arkansas*, 235 S.W.3d 872 (Ark. 2006) ("*Johnson IV*"). Having exhausted his state remedies, Johnson petitioned the district court[1] for a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied relief, *Johnson v. Norris*, No. 5:06CV00185 JLH, 2007 WL 2343883 (E.D. Ark. 2007) ("*Johnson V*"), but granted Johnson a certificate of appealability on several issues. We affirm.

I.

We recite the pertinent facts as set forth by the Supreme Court of Arkansas in *Johnson I* and *Johnson II*, which are cited with approval in that court's two decisions upholding the denial of post-conviction relief.

On the morning of April 2, 1993, a friend discovered Carol Heath's body in the living room of Heath's apartment in DeQueen, Arkansas. When the police removed Heath's two children from the home, Ashley Heath, then six years old, told Heath's friend that a man had broken into the home during the night. *Johnson II*, 27 S.W.3d at 408. Ashley was interviewed by Arkansas state police investigator Hayes McWhirter a few hours later. Ashley told McWhirter that a black male with "a girl sounding name" had come to the house during the night. Ashley said that the man, who was wearing a green shirt and sweater, told Heath that he had just been released from jail, and said that the man was mad at Heath for dating another man, Branson Ramsey. Ashley said that after her mother and the man fought, she saw her mother on the floor bleeding, and that the man was next to her mother, holding a knife. *Id.* at 409. After this exchange, McWhirter handed Ashley a stack of seven photographs

---

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

from which to identify the intruder, and she selected a photograph of Johnson. *Johnson I*, 934 S.W.2d at 181.

Johnson was arrested in Albuquerque, New Mexico, on April 14th, 1993, after falsely identifying himself to officers during a traffic stop. According to one officer, Johnson offered each officer $5000 to let him go, and told the officers that he had killed someone in Arkansas. Johnson was taken into custody and returned to Arkansas. *See Johnson III*, 157 S.W.3d at 164.

DNA from hair found in Heath's apartment was consistent with Johnson's, and initial testing showed that the DNA pattern in the hair appeared in one of every 250 African-Americans. More precise DNA testing later revealed that the DNA pattern occurs in only one of every 720 million African-Americans. *Johnson IV*, 235 S.W.3d at 874-75. DNA testing on a cigarette butt and a bloody green shirt found by the roadside yielded similar results. The DNA from the saliva on the cigarette butt was consistent with Johnson's and occurred with a frequency of 1 in every 28 million African-Americans. *Johnson III*, 157 S.W.3d at 162-63. The DNA from the blood on the shirt was consistent with Heath's, and occurred with a frequency of 1 in 380 million Caucasians, 1 in 6.4 billion African-Americans, and 1 in 390 million western Hispanics. *Johnson V*, 2007 WL 2343883 at *3.

At Johnson's first trial, conducted in Sevier County, Ashley was seven years old, and she could not be persuaded to testify. The trial judge deemed her not competent to testify, and allowed investigator McWhirter to read Ashley's prior statement to the jury. McWhirter testified that Ashley identified Johnson as the intruder after she viewed a stack of photographs. *Johnson II*, 27 S.W.3d at 410. The Supreme Court of Arkansas reversed and ordered a new trial after determining that the trial court erred in allowing McWhirter to testify about Ashley's identification of Johnson. The court concluded that the evidence was not admissible under the excited utterance exception to the hearsay rule. *Johnson I*, 934 S.W.2d at 182.

On remand, Johnson asked that the trial be moved to Little River County in light of the extensive publicity in Sevier County. The trial judge granted the motion for a change of venue, but moved the trial to Pike County rather than Little River County. Johnson objected to the judge's choice of venue on the ground that the percentage of African-Americans in Pike is much smaller than that in either Sevier or Little River. The judge overruled Johnson's objection, and the case was transferred to Pike County.

Ashley was ten years old at the time of the second trial, and she had been treated by a psychotherapist in the years after the murder of her mother. Prior to a hearing about Ashley's competency to testify in the second trial, Johnson requested discovery of notes taken during Ashley's psychotherapy sessions. Although Arkansas law recognizes a privilege protecting confidential communications between a psychotherapist and her patient, Ark. R. Evid. 503(b), Johnson argued that these records were necessary for him to present an adequate defense, for they would enable him to challenge the witness's competency at the competency hearing and before the jury, and to show the need for a defense expert. Ashley had waived the psychotherapist privilege for the first trial, but her attorney *ad litem* invoked the privilege as it related to counseling that occurred after the first trial. The trial judge agreed that communications occurring after the first trial were privileged, and denied Johnson's motion to discover records that would disclose those communications. *Johnson II*, 27 S.W.3d at 410.

Prior to the second trial, Johnson also moved to suppress the statements made to the arresting officers in Albuquerque. Johnson did not testify at the suppression hearing. Johnson's motion to suppress was ultimately denied. *Johnson III*, 157 S.W.3d at 164. At trial, Johnson sought to introduce testimony from Cordelia Vinyard, Branson Ramsey's ex-wife, in an effort to portray Ramsey as an alternative suspect. The trial court excluded the testimony. *Id.* at 166.

Johnson was convicted at the second trial and sentenced to death. In the penalty phase of the proceeding, the jury found that the State proved three statutory aggravating circumstances, *see* Ark. Code. 5-4-604, including that Johnson committed the murder in an "especially cruel manner." *Id.* § 5-4-604(8). The State also presented certain victim impact evidence, pursuant to Ark. Code § 5-4-602(4), which was admitted over Johnson's objection. The Supreme Court of Arkansas concluded on direct appeal that the trial court correctly applied state law when it refused to provide access to Ashley's psychotherapy records, did not abuse its discretion in excluding Vinyard's testimony, and properly admitted victim impact evidence. In anticipation of a retrial after Johnson's first conviction, the state supreme court also had ruled that the "especially cruel" aggravating circumstance was not unconstitutionally vague or overbroad, and that the Arkansas victim impact statute was constitutional. In a post-conviction proceeding, the state courts concluded that Johnson did not receive ineffective assistance of counsel, and that the consideration of victim impact evidence did not violate the Constitution. These federal proceedings followed.

## II.

A federal court shall not grant a writ of habeas corpus on a claim that was adjudicated on the merits by a state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d). With this standard of review in mind, we turn to Johnson's claims.

-5-

## A.

Johnson first argues that his rights under the Sixth and Fourteenth Amendments were violated when the district court denied Johnson access to Ashley's psychotherapist records. Johnson claims that this denial limited his "right to present a defense" by infringing on "his rights of compulsory process, confrontation, and due process." Specifically, Johnson claims that the psychotherapy records would have allowed him to impeach Ashley during the competency hearing and at trial. He contends that by denying him access to these records, the trial court prevented him from presenting material information to the jury and impaired his ability to confront the witness. Johnson argues that his constitutional rights override the psychotherapist privilege embodied in Arkansas Rule of Evidence 503.

The Arkansas courts rejected this argument, reasoning that the denial of access did not violate Johnson's Sixth and Fourteenth Amendment rights, because according to *Jaffee v. Richmond*, 518 U.S. 1 (1996), the psychotherapist "privilege is more important than 'the need for probative evidence.'" *Johnson II*, 27 S.W.3d at 412 (quoting *Jaffee*, 518 U.S. at 9-10). In response to Johnson's claim that the records would have allowed him more effectively to challenge Ashley's competency, the Supreme Court of Arkansas reasoned that "[a]ccess to the records of [Ashley's] second therapist would have in no way aided the defense in challenging whether or not the child was able to appreciate telling the truth on the witness stand, as the child herself was available for cross-examination on this point." *Id.* at 410. The state court further rejected Johnson's claim that he was entitled to obtain the records for use at trial, because it thought *Jaffee* established that the "psychotherapist-patient privilege is paramount to the need to gain access to the privileged material for evidentiary purposes." *Johnson II*, 27 S.W.3d at 412.

Johnson claims that the rationale of *Jaffee* is inapplicable here, because that decision did not consider whether the privilege must give way to the rights of an

accused in a criminal case. He contends that the Arkansas courts unreasonably applied another precedent, *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), which held that the Due Process Clause of the Fourteenth Amendment entitled an accused to have a trial court conduct *in camera* review of a state agency's confidential file to determine whether any information in the file was material to the accused's defense. *Id.* at 60. The Pennsylvania statute at issue in *Ritchie*, however, contemplated *some* use of agency records in judicial proceedings, and provided that information would be disclosed when directed by court order. *Id.* at 58. The Supreme Court expressed no opinion on whether the result would be different if the statute had protected the agency files from disclosure to *anyone*, including law enforcement and judicial personnel. *Id.* at 57 n.14. Unlike the confidentiality protection for the agency files in *Ritchie*, the psychotherapist privilege in Arkansas is unqualified, and it is waivable only by the person who is entitled to assert it. Ark. R. Evid. 503(b)-(c). *Ritchie* thus does not dictate the conclusion in this case.

In *Newton v. Kemna*, 354 F.3d 776, 781 (8th Cir. 2004), we considered a contention similar to Johnson's. In that case, the petitioner argued that his constitutional right to confront witnesses against him should trump an unqualified Missouri privilege that protected physician-patient communications, and that the state court's invocation of the privilege to limit his cross-examination of a prosecution witness violated the Sixth Amendment. We concluded that whether a constitutional right overrides a state policy to protect confidentiality "seems to be a function of the relative strength of the privilege and the nature of the constitutional right at stake." 354 F.3d at 782. The right to cross-examine a key witness prevailed over a state policy of protecting the anonymity of juvenile offender records in *Davis v. Alaska*, 415 U.S. 308, 319-20 (1974), but the Court "expressly left open the question of whether a criminal defendant's constitutional rights might overcome the attorney-client privilege" in *Swidler & Berlin v. United States*, 524 U.S. 399, 408 n.3 (1998). *Newton*, 354 F.3d at 781; *see also Ritchie*, 480 U.S. at 56 (observing that the applicability of the Compulsory Process Clause to a claim for discovery of evidence

is "unsettled"). Because we were "unable to discern any transcendental governing principles" that foreshadowed how the Supreme Court would resolve a claim that the right to confrontation prevails over the physician-patient privilege, we held in *Newton* that the state court's decision was not contrary to or an unreasonable application of clearly established law. 354 F.3d at 782.

We reach the same conclusion with respect to Johnson's claim. Although *Davis* and *Ritchie* establish that in at least some circumstances, an accused's constitutional rights are paramount to a State's interest in protecting confidential information, those decisions do not establish a specific legal rule that answers whether a State's psychotherapist-patient privilege must yield to an accused's desire to use confidential information in defense of a criminal case. In *Newton*, moreover, we specifically rejected an argument in the context of a discovery dispute that *Jaffee* allows for a "balancing" approach to the psychotherapist-patient privilege. 354 F.3d at 784. Even if the Supreme Court's decisions suggest that some degree of balancing is necessary in a criminal case, they seem to provide only general guidance. "Applying a general standard to a specific case can demand a substantial element of judgment," *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004), and under AEDPA, "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* Given the absence of direct guidance from the Supreme Court in this area, the decisions of the Arkansas courts to enforce the psychotherapist-patient privilege under these circumstances were within the range of reasonableness permitted by AEDPA.

Johnson also argues that production of the psychotherapy records was required under the due process rationale of *Brady v. Maryland*, 373 U.S. 83 (1963). The Supreme Court of Arkansas rejected this contention, because the argument "presupposes that the State had access to or knowledge of the records and their contents," and Johnson had "not shown that the State had access to the records sought." *Johnson II*, 27 S.W.3d at 412-13. The Arkansas court did not unreasonably

-8-

apply *Brady* when it said that the State has no obligation to disclose medical records that are not in its possession. *See United States v. Riley*, 657 F.2d 1377, 1386 (8th Cir. 1981). Johnson does not refute the state court's determination that the prosecution had no access to records of Ashley's psychotherapy treatment. Accordingly, the Arkansas court did not unreasonably apply clearly established federal law in rejecting Johnson's *Brady* claim.

B.

Johnson next argues that his Sixth Amendment right to counsel was violated because his trial counsel was ineffective at the pre-trial suppression hearing. Johnson claims that he never made an unprovoked confession to the arresting officers in Albuquerque, and that trial counsel failed to challenge the testimony of police officers that Johnson made admissions to them. Johnson says that he would have disputed the police testimony if he had been called as a witness, but that trial counsel urged him not to testify. Counsel, he contends, was ignorant of Arkansas Rule of Evidence 104(d), which allows a defendant at a preliminary hearing to avoid cross-examination on the merits of a case. Johnson also argues that even if he did confess to the officers in New Mexico, trial counsel was ineffective for not attempting more vigorously to exclude the confession, and for failing to object to the admission of other incriminating statements made at the same time as the confession.

Johnson's ineffective assistance claim is governed by *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a defendant to show both that counsel's performance was deficient and that the deficiency prejudiced his defense. The Supreme Court of Arkansas determined that Johnson had not made either showing. *Johnson III*, 157 S.W.3d at 164. The state court explained that even though trial counsel did not file a written motion to suppress, counsel was able to litigate the suppression issue at a pretrial hearing. We agree that Johnson has not demonstrated that counsel's failure to present a motion in writing, rather than orally, was such a

serious failure that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Strickland*, 466 U.S. at 687, or that Johnson was prejudiced by counsel's choice to proceed in that manner. The state court's rejection of this ineffective-assistance claim was not an unreasonable application of *Strickland*.

As for Johnson's claim that his counsel should have called him to testify at the pretrial hearing, the state circuit court determined that counsel's decision was a matter of trial strategy, (Johnson App. 2313), and the Supreme Court of Arkansas accepted the testimony of trial counsel that Johnson made the decision not to testify after counsel explained the situation. *Johnson III*, 157 S.W.3d at 164. Johnson relies on an admission by a junior member of Johnson's trial team that he was unfamiliar with Arkansas Rules of Evidence, but the record does not refute the state court's determination that Johnson was able to make his own decision about whether to testify after counsel explained the situation. This is because Johnson's *lead* counsel testified that he informed Johnson that the rules of evidence would limit the scope of cross-examination at the hearing, but there was still a risk to Johnson if he took the stand. According to counsel, he advised Johnson of the risk that testimony by the defendant would "open the door" to potentially damaging evidence, and that prosecutors "are going to figure out a way a lot of times to get something else in." Counsel recounted his advice to Johnson that "if the defendant cannot really, really help himself, he should never take the stand because if he can't help himself and he takes the stand, he puts himself subject to cross-examination by the prosecutor." This advice reflects counsel's strategic understanding of the risks and benefits of his client testifying at the suppression hearing. It was not an unreasonable application of *Strickland* for the state courts to determine that counsel acted within the wide range of professionally competent assistance when he gave this advice to Johnson before allowing Johnson to decide whether to testify.

Finally, Johnson claims that his trial counsel was ineffective in failing to object to the admission of other statements that Johnson made to the officers in New Mexico.

In particular, one officer testified that Johnson "start[ed] talking about some homicides in Arizona and [was] talking about drugs." Johnson contends that this testimony suggested that he had committed other crimes, and that counsel should have tried to exclude them. At the post-conviction hearing, trial counsel testified that he believed the statements would be admitted, and he decided not to object as part of a strategy to make Johnson's statements (including the confession to the Heath murder) appear to be "outrageous ramblings" and "not credible." *Johnson III*, 157 S.W.3d at 164. The Arkansas circuit court and the Supreme Court of Arkansas determined that this decision was part of defense counsel's trial strategy, and thus not grounds for postconviction relief. *Id.* The Supreme Court's guidance is that strategic decisions by counsel are "virtually unchallengeable" unless they are based on deficient investigation. *See Strickland*, 466 U.S. at 690; *Link v. Luebbers*, 469 F.3d 1197, 1204 (8th Cir. 2006). The Supreme Court of Arkansas decision on this point is therefore not contrary to, or an unreasonable application of, clearly established federal law.

C.

Johnson's next claim is that his trial counsel was ineffective when he failed to raise a constitutional challenge to the trial court's refusal to admit Cordelia Vinyard's testimony. Vinyard had been married to Branson Ramsey until April 1, 1993, the date of Heath's death. Johnson proffered that Vinyard would have testified that Ramsey had physically abused her and had bitten her breast at times during the four years prior to their divorce. Ramsey was dating Heath at the time of the murder, and Johnson sought to use her testimony to portray Ramsey as an alternative suspect, by connecting the bite marks that Vinyard allegedly suffered with the bite marks on Heath's body. Johnson's trial counsel argued that the evidence was relevant to the defense, but the trial judge excluded the testimony as a matter of state evidentiary law, on the ground that it would do "no more than create an inference or conjecture as to another's guilt." *Zinger v. State*, 852 S.W.2d 320, 323 (Ark. 1993) (internal quotation omitted).

-11-

Johnson now argues that his counsel also should have raised a federal constitutional argument for admitting the testimony.

The Supreme Court of Arkansas rejected Johnson's claim, holding that he failed to show a reasonable probability that the outcome would have been different if counsel had couched the argument for admission of Vinyard's testimony in constitutional terms. *Johnson III*, 157 S.W.3d at 166. This was not an unreasonable application of the prejudice component of *Strickland*. The state trial court rejected the proffered testimony under the *Zinger* rule, concluding that it provided only an "inference or conjecture" of Ramsey's guilt. *Johnson II*, 27 S.W.3d at 201 (citing *Zinger*, 852 S.W.2d at 323). Given the state law basis for rejecting the testimony, there is little reason to believe that the trial court would have accepted an argument to admit Vinyard's testimony based on a constitutional right "to present a defense." The Supreme Court recently recognized the "well-established" and "widely accepted" rules of evidence that "permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006). These rules include those excluding evidence "proffered by criminal defendants to show that someone else committed the crime with which they are charged." *Id.* at 327. This discussion and the cited authorities lead us to conclude that any constitutional argument that might have been advanced by Johnson's counsel would have been unsuccessful. Because no prejudice resulted from trial counsel's failure to make a constitutional argument on this point, the state court did not unreasonably apply *Strickland* in holding that counsel was not ineffective.

D.

Under Arkansas law, a defendant found guilty of capital murder may be sentenced to death if a jury finds, beyond a reasonable doubt, that an aggravating circumstance exists and that all the aggravating circumstances outweigh mitigating

circumstances and justify the penalty of death. Ark. Code Ann. § 5-4-603. One of the aggravating circumstances found by the jury in Johnson's case was that the murder was committed in "an especially cruel manner." Ark. Code Ann. § 5-4-604(8)(A). The Arkansas statute further provides that a capital murder is committed in an "especially cruel manner" when "as part of a course of conduct intended to inflict mental anguish, serious physical abuse, or torture upon the victim prior to the victim's death, mental anguish, serious physical abuse, or torture is inflicted." "Mental anguish" is further defined as "the victim's uncertainty as to his or her ultimate fate." § 5-4-604(8)(A)(ii)(a). "Serious physical abuse" means physical abuse that creates a substantial risk of death or that causes protracted impairment of health, or loss or protracted impairment of any bodily member or organ," and "torture" means "the infliction of extreme physical pain for a prolonged period of time prior to the victim's death." § 5-4-604(8)(A)(ii)(b)-(c). The jury was instructed in accordance with these definitions.

Johnson argues that the "especially cruel manner" aggravating circumstance is unconstitutionally vague. The state supreme court rejected Johnson's vagueness argument, relying on its earlier decision in *Greene v. State*, 878 S.W.2d 384, 390 (Ark. 1994). *See Johnson I*, 934 S.W.2d at 188 (addressing issues in anticipation of retrial). *Greene* explained that Arkansas's "cruel or depraved manner" aggravating circumstance was modeled after Arizona's comparable aggravating circumstance, which was upheld against an Eighth Amendment challenge in *Walton v. Arizona*, 497 U.S. 639 (1990), *overruled on other grounds in Ring v. Arizona*, 536 U.S. 584 (2002). In *Walton*, the Court held that the Arizona Supreme Court's limiting interpretation of its "heinous, cruel or depraved" aggravating circumstance was not unconstitutionally vague. The Arizona court interpreted "cruel" to mean that the perpetrator "inflicts mental anguish or physical abuse before the victim's death," and that "mental anguish includes a victim's uncertainty as to his ultimate fate." *Id.* at 646. The Supreme Court in *Walton* concluded that this limiting interpretation was sufficient to give "meaningful guidance to the sentencer," and not impermissibly vague. *Id.* at 655.

-13-

The Supreme Court of Arkansas in *Greene* (and *Johnson I*) determined that the nearly identical Arkansas statute was constitutional as well. *See Johnson I*, 934 S.W.2d at 188. In view of *Walton*'s holding regarding a comparable aggravating circumstance, the Arkansas court did not unreasonably apply clearly established federal law in rejecting Johnson's vagueness challenge.

Johnson also claims that the limitation imposed by the "especially cruel" aggravating circumstance is illusory, because the circumstance can be applied "to any homicide in which the victim did not die almost instantly." Even if the circumstance is limited to that subset of homicides, it was not unreasonable for the Supreme Court of Arkansas to conclude that the aggravating circumstance genuinely narrows the class of death-eligible persons, and therefore complies with the Eighth Amendment. *See Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988). At the time of the state court's decision, there was no clearly established federal law that an aggravating circumstance must narrow the class of death-eligible persons to any particular degree. The Supreme Court's guidance has been that "the circumstance may not apply to every defendant convicted of a murder; it must apply only to a sub-class of defendants convicted of murder." *Tuilaepa v. California*, 512 U.S. 967, 972 (1994); *see also Arave v. Creech*, 507 U.S. 463, 474 (1993) ("If the sentencer fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty, the circumstance is constitutionally infirm."). Johnson's argument presupposes that the "especially cruel" circumstance does not apply to *every* murderer, because he acknowledges that it excludes at least those who kill their victims almost instantly. Therefore, we conclude that the Arkansas courts did not unreasonably apply clearly established federal law in rejecting his overbreadth challenge to the aggravating circumstance.

E.

Johnson next challenges the use of victim impact testimony at the sentencing phase of his trial. Two weeks after Heath's murder, Arkansas passed a law permitting the introduction of victim impact testimony in capital proceedings. *See* Ark. Code Ann. § 5-4-602. Johnson argues that the application of this law to his case violates the Constitution's prohibition on *ex post facto* laws. This contention is foreclosed by *Nooner v. Norris*, 402 F.3d 801, 806-07 (8th Cir. 2005), where we held that "the Arkansas victim impact evidence statute is procedural in nature and does not offend the ex post facto clause." *Id.* at 807.

Johnson also argues that the Arkansas victim impact statute is unconstitutional because it allows the admission of irrelevant and prejudicial evidence, and that victim impact evidence "has no place in the aggravation-mitigation weighing process." The Supreme Court of Arkansas has concluded, as a matter of state law, that victim impact evidence is not an aggravating circumstance, but is "simply evidence to be considered" in the statutory weighing process. *Johnson III*, 157 S.W.3d at 173. In response to a contention that victim impact evidence conflicts with the weighing process for aggravating and mitigating circumstances, the Arkansas court alluded to "the State's legitimate interest in counteracting the defendant's mitigating evidence," *Kemp v. State*, 919 S.W.2d 943, 956 (Ark. 1996) (cited in *Johnson III*, 157 S.W.3d at 173), and relied on the Supreme Court's recognition that "there is nothing unfair about allowing the jury to bear in mind [the specific harm caused by the defendant] at the same time it considers the mitigating evidence introduced by the defendant." *Id*. (quoting *Payne v. Tennessee*, 501 U.S. 808, 826 (1991)). We agree with the state court's application of *Payne*, and conclude that the decision does not unreasonably apply established federal law.

In a related argument, Johnson complains that the consideration of victim impact evidence in his case was unconstitutional because the jury was not directed

how to consider the evidence. The Supreme Court of Arkansas has rejected this claim, citing the Supreme Court's direction that "'[a] capital sentencer need not be instructed on how to weigh any particular fact in the capital sentencing decision.'" *Kemp*, 919 S.W.2d at 956 (quoting *Tuilaepa*, 512 U.S. at 979). *See Johnson I*, 934 S.W.2d at 189 (citing *Kemp*). Particularly given the Court's statement in *Payne* that "[t]here is no reason to treat [victim impact] evidence differently than other relevant evidence is treated," 501 U.S. at 827, the state court's decision to require no special instruction is consistent with established federal law. We further agree with the district court that nothing in the Supreme Court's decisions regarding unconstitutionally vague statutes, *e.g.*, *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972); *Lanzetta v. New Jersey*, 306 U.S. 451 (1939), suggests that a State may not allow victim impact evidence in the penalty phase of a capital case without a specific instruction to the jury about how to consider that evidence.

Johnson next claims that the admission of victim impact testimony violates the Sixth Amendment because victim impact constitutes a "*de facto* aggravating circumstance," and because under *Ring v. Arizona*, 536 U.S. 584 (2002), the Sixth Amendment requires that an aggravating circumstance that increases the maximum punishment available must be proved to a jury beyond a reasonable doubt. Under Arkansas law, however, victim impact is not an aggravating circumstance. Rather, admission of victim impact evidence is provided for separately as "[o]ther matter relevant to punishment." Ark. Code Ann. § 5-4-602(4)(A)(iii). It is "not an additional aggravating circumstance but rather is relevant evidence which informs the jury of the toll the murder has taken on the victim's family." *Noel v. State*, 960 S.W.2d 439, 446 (Ark. 1998). Unlike a statutory aggravating circumstance, victim impact testimony is not "necessary to support a death sentence," *Ring*, 536 U.S. at 607, and it does not qualify the defendant for the death penalty like an aggravating circumstance under Ark. Code Ann. § 5-4-603(a). As a result, the Supreme Court of Arkansas did not unreasonably apply federal law in concluding that *Ring* is inapplicable. *See also*

*Schriro v. Summerlin*, 542 U.S. 348, 358 (2004) (holding that *Ring* does not apply retroactively to cases on collateral review).

F.

Johnson also disputes the trial court's decision to move the case to Pike County rather than Little River County, after Johnson requested to change venue due to pretrial publicity. African-Americans constituted 19 percent of the population in Little River County, but only 3.2 percent in Pike County. Johnson argues that the trial court's decision to move the case to Pike County violated his rights under the Sixth Amendment to be tried by a jury that represents a fair cross-section of the community. *See Taylor v. Louisiana*, 419 U.S. 522, 530 (1975). He further contends that the decision of the Supreme Court of Arkansas was an unreasonable application of decisions "forbidding manipulative practices which would have the effect of reducing minority participation," citing the Supreme Court's holding that the Equal Protection Clause prohibits racially motivated peremptory challenges during jury selection. *See Batson v. Kentucky*, 476 U.S. 79 (1986)

There is no discussion of these claims in the decisions of the Supreme Court of Arkansas, but the State suggests that the court rejected the arguments summarily as part of its review of the record for prejudicial error pursuant to Ark. Sup. Ct. R. 4-3(h). *See Johnson II*, 27 S.W.3d at 416.[2] Whether or not these claims have been exhausted and decided on the merits by the state supreme court, *see* 28 U.S.C.

---

[2]In his brief filed with the Supreme Court of Arkansas, Johnson discussed his motion for change of venue in a section advanced "pursuant to Rule 4-3 of the Rules of the Supreme Court," and entitled "Other Objections." (R. Doc. 10, Resp. Exh. F, at 907-08). Johnson explained that he sought to move the case to Little River County rather than Pike County, explained the percentage of black persons in the population of each county, and noted that the defense "did not move to quash the panel and did not object to the seating of the jury as it was." The brief advanced no argument based on the fair cross-section requirement of the Sixth Amendment.

§ 2254(b)(2). they are in any event foreclosed by our decision in *Mallett v. Bowersox*, 160 F.3d 456 (8th Cir. 1998). In *Mallett*, a black man argued that the state trial court violated his rights under the Sixth Amendment, Equal Protection Clause, and Due Process Clause by transferring his case to a county in which no black person resided. Our court held that *Batson* was inapplicable to a change of venue, because the trial court's decision on venue had nothing to do with prosecutorial discrimination in striking venirepersons based on race. *Id.* at 460. We also rejected Mallett's claim that the change of venue deprived him of a jury drawn from a fair cross-section of the community, because "[n]o authority exists for the proposition that the term 'community,' as used in the context of this Sixth Amendment claim, means any place other than" the county from which the jury venire ultimately was drawn. *Id.* at 461. For the reasons given in *Mallett,* Johnson cannot establish that the change in venue in this case violated his constitutional rights.

## G.

Johnson's final argument is that the certificate of appealability should be expanded to encompass a claim that his constitutional rights were violated when the Arkansas courts refused to order a third round of DNA testing on certain evidence relating to the murder, and to order testing on a number of Caucasian hairs that the prosecution stipulated did not belong to Johnson. For the reasons stated by the district court, *Johnson*, 2007 WL 2343883, at *18-19, we conclude that Johnson has not "made a substantial showing of the denial of a constitutional right" on these claims. 28 U.S.C. § 2253(c)(2).

\* \* \*

The judgment of the district court is affirmed.

_____