# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3972

_____

| | | |
|---|---|---|
| Harold Newton, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Mike Kemna, | * | District of Missouri. |
| | * | |
| Appellee. | * | |

_____

Submitted:  September 10, 2003

Filed:  January 9, 2004

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and BYE, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Harold Newton was convicted in a Missouri state court of first degree murder, kidnapping, and two counts of armed criminal action.  After exhausting his state post-conviction remedies, Mr. Newton filed a petition under 28 U.S.C. § 2254.  The district court[1] denied Mr. Newton's petition but granted him a certificate of appealability on two of his claims relating to the testimony of Carla Ennis.  We affirm.

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

I.

Neal Hurst was abducted at gunpoint as he was walking with three acquaintances in front of his home. Shortly thereafter, while riding in a car that was being pursued by the police, Mr. Hurst was killed by gunshots fired from inside the vehicle. At the conclusion of the pursuit, two of the men who were in the car with Mr. Hurst were arrested, but a third man fled the scene. The next day, Ms. Ennis, a friend of Mr. Hurst's who was with him when he was abducted, positively identified the two men who had been arrested as the driver and the person in the right rear passenger seat, and also gave a description to the police that matched Harold Newton as the man who had escaped. She testified at trial that, as Mr. Hurst was being forced into the car by one of the abductors, she ran to the front door of Mr. Hurst's house where she saw Mr. Newton come out of the house holding a gun, after which he got into the car with Mr. Hurst and the other two abductors. In addition to Ms. Ennis's testimony linking Mr. Newton to the crime, Mr. Newton's fingerprints were found on the outside of the passenger door of the car, and his wallet was found in the glove compartment.

The trial court, following a pretrial hearing, denied Mr. Newton's motion to disqualify Ms. Ennis as a witness on the ground of incompetency, and denied his motion to produce her medical records because she asserted her physician-patient privilege. Ms. Ennis was the prosecution's only eyewitness identifying Mr. Newton as one of the persons involved in the abduction of Mr. Hurst. The claims in Mr. Newton's habeas corpus petition focus largely on certain psychiatric records pertaining to Ms. Ennis that were reviewed *in camera* after his conviction by the state trial and appellate courts. These records, which relate solely to periods of time occurring after the abduction and murder of Mr. Hurst, consist of medical and psychological records from Malcom Bliss Mental Health Center and St. John's Mercy Medical Center and Ms. Ennis's prescription profile from JFK Clinic Pharmacy.

-2-

## II.

The district court granted a certificate of appealability to Mr. Newton on two of his claims: that the trial court erred in limiting his cross-examination of Ms. Ennis, and that the trial court erred in finding that Ms. Ennis was competent to testify. We limit our appellate review to the claims specified in the certificate of appealability, and related discovery decisions made by the district court. We apply the standards of review set forth in the Antiterrorism and Effective Death Penalty Act, under which an application for a writ of habeas corpus "shall not be granted" unless the Missouri courts' adjudication of either of the claims resulted in a decision that was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## III.

We begin with a consideration of Mr. Newton's confrontation clause claim. Mr. Newton contends that the trial court violated the sixth amendment's confrontation clause by denying him access to Ms. Ennis's psychiatric records and restricting his cross-examination of Ms. Ennis regarding post-offense issues.

Mr. Newton asserted this claim on direct appeal in state court, where he contended that "the trial court erred and abused its discretion in limiting his cross-examination of Carla Ennis to an examination of her mental condition on [the date of the offense] and during times she gave testimony in the case" and that he should have been able to cross-examine Ms. Ennis regarding her mental state throughout the two-year period following the offense. The Missouri Court of Appeals rejected the claim, holding that there was no abuse of discretion by the trial court in limiting Mr. Newton's proffered impeachment evidence, and concluded that Mr. Newton had "not pointed out any evidence or testimony, excluded by the trial court during cross-examination, which reflects on [Ms.] Ennis' ability to recollect her observations about

-3-

the kidnapping." *State v. Newton*, 925 S.W.2d 468, 472 (Mo. Ct. App. 1996) (*Newton I*).

During a pretrial conference, the trial court informed Mr. Newton's counsel that he could question Ms. Ennis about her drug use, drinking, and mental health before and at the time that she observed the kidnapping, and at any time that she testified. The trial court also allowed Mr. Newton to make an offer of proof, outside of the hearing of the jury, to determine if a continual drug problem would disqualify Ms. Ennis as a witness.

During cross-examination at trial, Mr. Newton's attorney questioned Ms. Ennis about specific instances of crack cocaine use on the day of the crime, both before and after she witnessed Mr. Hurst's kidnapping, and about her alleged drinking on the night of the incident. Ms. Ennis was also asked during cross-examination whether she was taking Stelazine, Cogentin, or Prozac on the date of her observations, which she denied. The trial court refused to allow Mr. Newton's attorney to ask Ms. Ennis about an alleged suicide attempt that she made several days after the kidnapping and murder, but other than that, Mr. Newton's attorney made no attempt to ask Ms. Ennis about her mental health on the dates in question, as the trial court was willing to allow him to do. Mr. Newton offered the testimony of Ms. Ennis's sister that Ms. Ennis had turned over some crack cocaine to someone before she went to the police station to give a statement so that the police would not find it on her, and the observation of Ms. Ennis's mother that Ms. Ennis was "full of drugs" at the time of the incident. Defense witnesses also presented testimony providing Mr. Newton with an alibi for the period of time during which Mr. Hurst was kidnapped and murdered, and an innocent explanation for the presence of his wallet in the glove compartment and his fingerprints on the car. Mr. Newton presented the opinions of several witnesses that Ms. Ennis had a very bad reputation for truth and honesty. Mr. Newton neither offered nor attempted to offer any observations of Ms. Ennis's mental health on the relevant dates from people who knew her.

The confrontation clause, made applicable to the states through the fourteenth amendment, guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has made clear that "[c]onfrontation means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974). "[A] primary interest secured by [the confrontation clause] is the right of cross-examination." *Douglas v. Alabama*, 380 U.S. 415, 418 (1965).

The district court held that the trial court's restriction of the scope of Mr. Newton's cross-examination of Ms. Ennis (specifically, its prohibition of inquiry into Ms. Ennis's alleged suicide attempt and mental state after the murder) "was reasonable to accommodate legitimate state interests, namely the protection of a witness from interrogation that may have been harassing, confusing, or only marginally relevant to the issues." As the Missouri Court of Appeals found, Mr. Newton did not demonstrate "how the alleged suicide attempt would have impeached [Ms.] Ennis' recollection of the incident," and, in seeking "to cross-examine her regarding her entire psychological history," failed to point "to any specific facts which reflect on her ability to observe and remember." *Newton I*, 925 S.W.2d at 472.

Mr. Newton also contends that *United States v. Lindstrom*, 698 F.2d 1154 (11th Cir. 1983), supports his claim that the confrontation clause was violated by the denial of his access to Ms. Ennis's records. In *Lindstrom*, the Eleventh Circuit, in a direct appeal from a defendant's conviction, held that the trial court had violated the confrontation clause by restricting cross-examination and defense access to documents pertaining to the psychiatric history of the government's witness. *Id.* at 1159. Even assuming that the Missouri courts' resolution of the confrontation clause claim was contrary to the Eleventh Circuit's holding in *Lindstrom*, and that *Lindstrom* was correctly decided, that case does not assist Mr. Newton in his § 2254 petition, since we may grant relief only if the state court has decided a matter contrary to

-5-

clearly established Supreme Court precedent or has unreasonably applied that precedent, *see* 28 U.S.C. § 2254(d)(1). Mr. Newton has not identified any clearly established Supreme Court precedent requiring that a defendant have access to a witness's psychiatric records for impeachment purposes.

We recognize that one goal of effective cross-examination is to impeach the credibility of opposing witnesses. The Supreme Court has observed that "the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." *Davis*, 415 U.S. at 316. Mr. Newton, however, has had ample opportunity to cross-examine and impeach the character and testimony of Ms. Ennis. The trial court's decisions to preclude Mr. Newton from obtaining access to Ms. Ennis's psychiatric records and from cross-examining her about post-offense issues were apparently based on the legitimate state interests of avoiding irrelevant testimony and jury confusion, and protecting Ms. Ennis's assertion of her physician-patient privilege. The Supreme Court has emphasized that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original). Thus, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). We agree with the district court that the Missouri courts' restriction of the scope of Mr. Newton's cross-examination of Ms. Ennis does not merit federal habeas relief under the standards set forth in § 2254, and we hold that the state courts' adjudication of his confrontation clause claim was neither contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent.

-6-

We note that the Supreme Court has recognized in other circumstances that constitutional rights can trump evidentiary privileges. For instance, in *Davis*, 415 U.S. at 319-20, the Court held that Alaska's policy of protecting the anonymity of juvenile offender records had to yield to a defendant's right to cross-examine a key witness; and, in *Swidler & Berlin v. United States*, 524 U.S. 399, 408 n.3 (1998), the Court expressly left open the question of whether a criminal defendant's constitutional rights might overcome the attorney-client privilege. Whether a constitutional right might prevail over a privilege seems to be a function of the relative strength of the privilege and the nature of the constitutional right at stake, and we are unable to discern any transcendental governing principles that foreshadow what the Supreme Court would do in the case before us. Given the restrictive nature of habeas review, it is not our province to speculate as to whether the Supreme Court, if faced with the issue, would find that Missouri's physician-patient privilege must give way to a defendant's desire to use psychiatric records in cross-examination.

IV.

We next address Mr. Newton's claim that during trial the state court erred in finding Ms. Ennis competent to testify without first examining her psychiatric records. Mr. Newton has "elected not to brief the merits" of this claim because, he contends, "he lacks the factual tools he needs to argue his entitlement to habeas relief." He nevertheless asserts that he "has not abandoned the claim."

Both the Missouri trial court and the Missouri Court of Appeals have conducted *in camera* reviews of Ms. Ennis's psychiatric records in conjunction with this claim. The trial court, following its review of the records, stated that they "do not contain any relevant and material evidence pertaining to the ability of the witness, Carla Ennis, to observe and recollect the occurrence ... about which she gave testimony." The Missouri Court of Appeals, after conducting its review of Ms. Ennis's psychiatric records, described the state law standard for witness competency to testify as comprising the following four requirements: "a present

understanding of, or the ability to understand upon instruction, the obligation to speak the truth ...; the capacity to observe the occurrence about which testimony is sought ...; the capacity to remember the occurrence about which testimony is sought; and ... the capacity to translate the occurrence into words." *State v. Newton*, 963 S.W.2d 295, 297 (Mo. Ct. App. 1998) (*Newton II*). The court then noted that state law provided a presumption that Ms. Ennis was competent to testify absent a showing by Mr. Newton rebutting the presumption. *Id.* The court acknowledged that Ms. Ennis's records indicated that she was a patient at a mental health center three weeks after the events at issue transpired, but found that "there is no indication that she was adjudicated as mentally incompetent or confined to this institution during the period in question," and that the records "did not reveal any relevant and material information pertaining to the traditional criteria for witness competency" set forth under state law. *Id.*

The Missouri courts' resolution of the claim was based entirely on state law. The trial court applied state law in deciding to quash the subpoena and to find Ms. Ennis competent to testify, and the appellate court applied state law in holding that the quashing of the subpoena was not an abuse of discretion, since a review of the records did not reveal any relevant and material information pertaining to Ms. Ennis's ability to observe and recollect the occurrence resulting in Mr. Newton's conviction. In habeas corpus proceedings, it is not within our province "to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

The district court denied the competency claim, holding that Mr. Newton had "neither pleaded a constitutional violation nor cited any Supreme Court case in support of this claim," and that he had not shown why the trial court's decisions, based on the application of state law, to quash the subpoena and to find Ms. Ennis competent to testify, were contrary to, or an unreasonable application of, clearly

established federal law as determined by the Supreme Court. The district court's conclusion was quite clearly correct.

## V.

In addition to his two claims challenging the merits of the Missouri state courts' decisions, Mr. Newton challenges the federal district court's denial of his requests that it authorize discovery, or conduct an *in camera* review, of Ms. Ennis's psychiatric records, and the court's failure to conduct an evidentiary hearing on his claims. After filing his federal habeas petition, Mr. Newton filed a motion to authorize discovery of the records pursuant to Rule 6(a) of the Rules Governing § 2254 Cases, which governs discovery in § 2254 proceedings. After the district court issued an order denying discovery, Mr. Newton requested in his motion for reconsideration of the order that it alternatively conduct an *in camera* review of the psychiatric records. (While both the state trial and appellate courts conducted *in camera* reviews of Ms. Ennis's psychiatric records, these reviews were limited to determining if Ms. Ennis was competent to testify against Mr. Newton.)

## A.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gamley*, 520 U.S. 899, 904 (1997). Rule 6(a), however, provides that "[a petitioner] shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." The Supreme Court has developed a general approach to the question of whether a petitioner has established "good cause" sufficient to warrant discovery under Rule 6(a). *See Bracy*, 520 U.S. at 904-09. Under *Bracy*, a habeas court must identify the "essential elements" of the petitioner's substantive claim, *id.* at 904, evaluate whether " 'specific allegations ... show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief,' " *id.* at 908-09 (quoting *Harris v.*

*Nelson*, 394 U.S. 286, 300 (1969)), and, if the petitioner has made such allegations, " 'provide the necessary facilities and procedures for an adequate inquiry,' " *id.*

The district court held that Mr. Newton had made "specific allegations" showing that he might be entitled to relief, but nevertheless denied the motion to authorize discovery based on the federal psychotherapist-patient privilege as well as Missouri's interest in preserving mental patients' privacy. We review the district court's denial of discovery for an abuse of discretion. *See, e.g., Toney v. Gammon*, 79 F.3d 693, 700 (8th Cir. 1996). Noting that the federal law of privilege is fully applicable to habeas proceedings under Federal Rule of Evidence 501, the district court relied on *Jaffee v. Redmond*, 518 U.S. 1, 9-10, 15 (1996), which recognized a federal common law psychotherapist-patient privilege, and concluded that Mr. Newton's motion sought materials "that almost certainly fall squarely within the scope of the federal psychotherapist-patient privilege." It also noted that the Missouri Court of Appeals had concluded that the requested material fell within Missouri's psychotherapist-patient privilege.

Mr. Newton has failed to show that the district court abused its discretion in denying his motion to authorize discovery due to the privileged status of the requested documents. In *Jaffee*, the Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Id.* at 15. The Court did not attempt to flesh out the full contours of the privilege, but it rejected the idea that the psychotherapist-patient privilege was subject to a balancing test, and stated that "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Id.* at 17. In a footnote, the Court speculated that "future developments in the federal psychotherapist privilege" might uncover situations in which the privilege must give way, citing as an example

the situation in which "a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist." *Id.* at 18 n.19. Though this sole narrow exception suggested by the Supreme Court does not apply here, Mr. Newton argues that this footnote indicates that the district court abused its discretion in finding that Ms. Ennis's psychiatric records were privileged. We disagree. We believe that Mr. Newton, in essence, is asking us to apply a "balancing" approach to the psychotherapist-patient privilege, which approach was considered and expressly rejected by the Supreme Court in *Jaffee*.

Mr. Newton also cites *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), to support his contention that the federal psychotherapist-patient privilege must give way to a criminal defendant's constitutional right to confront witnesses against him. In *Ritchie*, 480 U.S. 43-45, the defendant, who had been convicted of child molestation, had sought to have records of a state protective services agency responsible for investigating cases of child mistreatment disclosed during pretrial discovery. Pursuant to a Pennsylvania statute, the records were subject to a qualified confidentiality. *Id.* at 57-58. Applying the rule of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that, when state law provides such a qualified confidentiality, a criminal defendant has the right, under the due process clause of the fourteenth amendment, to have the records reviewed *in camera* by the judicial authority to determine whether they contain potentially exculpatory information. *Id.* at 57-58. As Mr. Newton acknowledges, his claim is not a due process claim under *Brady*; it is, rather, a claim that the confrontation clause conferred a right to discover information necessary to make cross-examination more effective. While both a *Brady* due process claim and a confrontation clause claim were at issue in *Ritchie*, the Court did not produce a majority on the proper application of the confrontation clause to the pretrial discovery issue presented in that case. A plurality of the Court, however, concluded that the confrontation clause is not applicable to a claim involving the denial of access to pretrial materials. *Id.* at 51-54 (plurality opinion). *Ritchie*, moreover, involved a state statute protecting a public agency's case files in a qualified

way, rather than a privilege based on federal common law, and did not involve psychiatric records, which the Supreme Court recognized as falling under a federal common law privilege in *Jaffee*.

Mr. Newton maintains that *Love v. Johnson*, 57 F.3d 1305 (4th Cir. 1995), supports his position that, even if the district court did not abuse its discretion by refusing to grant him discovery, it abused its discretion by failing to conduct an *in camera* review of the records. The Fourth Circuit held in *Love* that the defendant, who had been convicted in state court of the rape of a minor and related sexual offenses, *see* 57 F.3d at 1306-07, was entitled to have psychiatric records in the hands of state agencies reviewed by the district court to determine whether they contained information that probably would have changed the outcome of his trial, *see id.* at 1315-16. *Love*, however, involved a *Brady* due process clause claim rather than a confrontation clause claim, as is at issue here, and, moreover, it predated the Supreme Court's decision in *Jaffee*, 518 U.S. at 15, which recognized for the first time the federal common law psychotherapist-patient privilege. The holding in *Love* appears to us to contradict the Supreme Court's disapproval in *Jaffee* of the *in camera* review of psychiatric records.

In light of the sparse and conflicting authority adopting Mr. Newton's position that psychiatric records are discoverable, or subject to an *in camera* examination, when a criminal defendant seeks them to aid in his defense, Mr. Newton's failure to identify even a single federal appellate court adopting this position, and the evident conflict of this position with the Supreme Court's holding in *Jaffee*, we hold that the district court did not abuse its discretion in denying Mr. Newton's request that it authorize discovery or conduct an *in camera* review of the psychiatric records.

## B.

Mr. Newton argues that the district court wrongly denied his request for an evidentiary hearing. We review a district court's decision on a habeas petitioner's

request for an evidentiary hearing for an abuse of discretion. *See Johnston v. Luebbers*, 288 F.3d 1048, 1059-60 (8th Cir. 2002), *cert. denied*, 537 U.S. 1166 (2003). We have held that "the district court must hold such a hearing if the petitioner has alleged disputed facts which, if proved, would entitle him to habeas relief." *Smith v. Bowersox*, 311 F.3d 915, 921 (8th Cir. 2002), *cert. denied*, 124 S. Ct. 233 (2003). In contrast, the court may deny an evidentiary hearing if such a hearing would not assist in resolving the petitioner's claim. *Johnston*, 288 F.3d at 1059. "In other words, even if the facts [the petitioner] seeks to prove are true, if those facts would not entitle him to relief (that is, if those facts would not show that the [state court] acted contrary to or unreasonably applied clearly established federal law), then the District Court did not abuse its discretion in denying [the petitioner's] request for an evidentiary hearing." *Id.*

We hold that the district court did not abuse its discretion in denying Mr. Newton's request for an evidentiary hearing. Mr. Newton has failed to allege disputed facts which, if proved, would indicate that the Missouri courts acted contrary to, or unreasonably applied, clearly established federal law when they rejected his confrontation clause or competency claims. Indeed, it is entirely unclear from Mr. Newton's brief what facts he would seek to prove at an evidentiary hearing. The district court did not abuse its discretion by concluding that the record contained all the facts necessary to resolve Mr. Newton's claims, and that no further evidentiary development was required.

## VI.

For the reasons indicated, we affirm the district court's denial of Mr. Newton's § 2254 petition.

_____