ROBERTO A. LANGE, UNITED STATES DISTRICT JUDGE
Defendant James Blue Jr. is charged with the aggravated sexual abuse of two children, CB and WWK. Doc. 1. According to Blue, the government intends to offer evidence under Rule 413 of the Federal Rules of Evidence that AM also made sexual assault allegations against Blue. Blue filed a motion seeking the following: 1) counseling records for CB from Capital Area Counseling as well as all records from the South Dakota Department of Social Services (DSS) concerning CB; 2) all DSS records concerning WWK, along with WWK's records from St. Joseph's Indian School, Crow Creek Middle School, Chamberlain Academy, Our Home, the New Beginnings Center in Aberdeen, and the Abbot House in Mitchell; and 3) certain records concerning AM from Child Protection Services in Brule County and Child's Voice in Sioux Falls, along with all records from DSS concerning AM. Docs. 36, 37.[1]
Blue asked this Court to issue a subpoena duces tecum under Federal Rule of Criminal Procedure 17(c) ordering that these records be produced to defense counsel or, in the alternative, to this Court *865 for in camera review. Concluding that CB and WWK were entitled to notice under Rule 17(c)(3) but that AM was not, this Court directed the government to inform CB and WWK that Blue was seeking confidential information about them and to determine whether they wished to assert the psychotherapist-patient privilege. Doc. 38. The government has informed this Court that CB and AM are asserting the psychotherapist-patient privilege. Doc. 39. Although the government has been unable to reach WWK, it wishes to assert the privilege on her behalf.[2] Doc. 39. The government argues that the psychotherapist-patient privilege bars disclosure of the records Blue seeks and that Blue has failed to satisfy the requirements of Rule 17(c). This Court addresses these arguments in turn.
I. Psychotherapist-Patient Privilege
The Supreme Court adopted the psychotherapist-patient privilege in Jaffee v. Redmond, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), where it held "that confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." 518 U.S. at 15, 116 S.Ct. 1923. Recognizing that the justifications for the psychotherapist-patient privilege applied with "equal force" to treatment by licensed social workers, the Supreme Court extended the privilege to cover "confidential communications made to licensed social workers in the course of psychotherapy." Id. Although the Supreme Court declined to define the parameters of the psychotherapist-patient privilege any further, it rejected the notion that the privilege was subject to a balancing test. Id. at 17, 116 S.Ct. 1923. In the Court's view, "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." Id. In a footnote at the end of Jaffee, however, the Supreme Court recognized that there would be circumstances in which the privilege must yield, giving as an example a situation where "a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist." Id. at 18, 116 S.Ct. 1923 n. 19.
Blue's motion for a subpoena and the alleged victims' assertion of the psychotherapist-patient privilege raise two main issues: (1) whether the records Blue seeks fall within the privilege; and (2) whether the privilege trumps Blue's request for the records. As to the first issue, a party invoking the psychotherapist-patient privilege must show that her communications were made (1) confidentially; (2) to a licensed psychotherapist; and (3) during the course of diagnosis or treatment. United States v. Wynn, 827 F.3d 778, 787 (8th Cir. 2016) ; United States v. Ghane, 673 F.3d 771, 783 (8th Cir. 2012). Analyzing whether the records Blue seeks meet *866 this test is difficult because this Court does not have the records and the parties have provided limited information about them. Nevertheless, this Court has enough information to make some preliminary observations.
To begin with, there is no evidence that the DSS records Blue requests for CB, WWK, and AM fall within the psychotherapist-patient privilege. DSS records for minor children usually consist of notes or reports by case workers concerning the child's background and current situation. Although DSS. records might record that a child is seeing a counselor or therapist and might even contain some information concerning the treatment, the DSS caseworker is not the person providing the mental health treatment. Absent any information that the DSS caseworkers here are licensed psychotherapists who were treating the alleged victims, the alleged victims' DSS records are not protected by the psychotherapist-patient privilege. Next, nothing indicates that WWK's records from the Crow Creek Middle School in 2012 contain confidential communications WWK made to a licensed psychotherapist during the course of treatment or diagnosis. The information Blue seeks from the Crow Creek Middle School concerns a report that WWK had sexual contact with an older boy, which is of dubious relevance at best, but not likely protected by the privilege here if the report was made to a teacher or school administrator. Finally, AM's records from Child Protection Services and Child's Voice in Sioux Falls do not appear to fall within the psychotherapist-patient privilege. Records from Child Protective Services would be similar to records from DSS; they would contain the child's biographical information and any allegations and investigations of abuse rather than confidential communications the child made during the course of treatment. The records Blue seeks from Child's Voice concern an exam AM had there in April 2016. Although Child's Voice may provide treatment or a diagnosis in some instances, Child's Voice typically conducts forensic evaluations and interviews of children believed to have been sexually abused as a part of investigating and documenting evidence. The government and AM have not presented any evidence that AM's exam at Child's Voice involved confidential communications AM made to a licensed psychotherapist during the course of treatment or diagnosis.
By contrast, CB's records from Capital Area Counseling and WWK's treatment records from St. Joseph's Indian School (where she saw a psychiatrist), Chamberlain Academy, Our Home, the New Beginnings Center, and Abbot House could fall within the psychotherapist-patient privilege. Relying on Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), Blue argues that his request for the records trumps the privilege because the records are "material and necessary to assure him his Sixth Amendment right to confront and cross-exam his accusers." Doc. 40 at 2. The issue in Ritchie was whether a defendant charged with molesting his daughter was entitled to pretrial discovery of her records from a state protective service agency. Id. at 42-43, 107 S.Ct. 989. The records were subject to qualified confidentiality under state law. Id. at 43, 107 S.Ct. 989. The state's highest court held that the defendant was entitled to the records under the Sixth Amendment's Confrontation and Compulsory Process Clauses. Id. at 51, 107 S.Ct. 989. A plurality of the Supreme Court rejected such an application of the Confrontation Clause, concluding that the Clause was not "a constitutionally compelled rule of pretrial discovery." Id. at 52, 107 S.Ct. 989 (plurality opinion). Instead, "the right to confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask *867 during cross-examination." Id. As to the Compulsory Process Clause, a majority of the Supreme Court noted that it had "never squarely held" that the Clause "guarantees the right to discover the identity of witnesses, or to require the government to produce exculpatory evidence." Id. at 56, 107 S.Ct. 989. Because it was "unsettled" whether the Compulsory Process Clause applied to the issue in Ritchie, the Court addressed the defendant's claim under the Fourteenth Amendment's Due Process Clause instead.[3] Id. Due process, the Supreme Court explained, requires the government to disclose "evidence in its possession that is both favorable to the accused and material to guilt or punishment." Id. at 57, 107 S.Ct. 989. Although the state argued that its interest in keeping the records confidential should control, the Supreme Court found that this interest did not "necessarily prevent[ ] disclosure in all circumstances." Id. at 57, 107 S.Ct. 989. After all, the state statute making the records confidential contemplated some exceptions, including when a court ordered the agency to produce its records. Id. at 58, 107 S.Ct. 989. The Supreme Court held that the Due Process Clause of the Fourteenth Amendment entitled the defendant to have the trial court review the records in camera to determine whether they contained material, exculpatory evidence. Id. at 57-58, 107 S.Ct. 989.
Ritchie does not conclusively establish that Blue is entitled to the records he seeks. First, it is questionable whether Blue has a constitutional right to the records under Ritchie. Although Blue argues that access to the records is necessary to "assure him his Sixth Amendment right to confront and cross-exam his accusers," the plurality in Ritchie held that the right to confrontation is a trial right rather than "a constitutionally compelled rule of pretrial discovery." Ritchie, 480 U.S. at 52, 107 S.Ct. 989. As the Eighth Circuit recently explained, the "Confrontation Clause has never been recognized as an independent method of enforcing pretrial disclosure of impeachment information." United States v. Wright, 866 F.3d 899, 912 n.3 (8th Cir. 2017) (citing Ritchie, 480 U.S. at 52, 107 S.Ct. 989 ). To the extent Blue argues that he is entitled to the records under the Due Process Clause, it is unclear whether the Supreme Court's due process analysis in Ritchie applies to the situation here, where the government appears not to possess the records. The Supreme Court in Ritchie began its due process analysis by citing Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), a case that applied Brady. Ritchie, 480 U.S. at 57, 107 S.Ct. 989. Brady, of course, held that due process requires the government to disclose evidence within its possession that is favorable to the accused and material either to guilt or punishment. Brady, 373 U.S. at 87, 83 S.Ct. 1194. The Supreme Court elaborated on Brady in Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), explaining that Brady applies not only to evidence in the prosecutor's actual possession, but also requires the prosecutor to "learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Kyles, 514 U.S. at 437, 115 S.Ct. 1555. The Eighth Circuit has described Brady as applying to evidence in the prosecution's possession or "reasonably available to it." United States v. Malone, 49 F.3d 393, 396 n.4 (8th Cir. 1995) ; see also *868 United States v. Flores-Mireles, 112 F.3d 337, 340 (8th Cir. 1997) (explaining that the prosecution has no duty under Brady to disclose evidence "over which the prosecutor has no actual or constructive control"). Some of the facts in Ritchie suggest that the agency from which the defendant was seeking the records was acting on the prosecution's behalf; the victim had reported the sexual abuse to the police and the police had then referred the matter to the agency, which the state had tasked "with investigating cases of suspected mistreatment and neglect." Ritchie, 480 U.S. at 43, 107 S.Ct. 989. Nevertheless, the Supreme Court did not make a specific finding that Brady's possession element was satisfied, in part because the relationship between the prosecution and the agency was less than clear. The Supreme Court noted that there was "no suggestion that the Commonwealth's prosecutor was given access to the [agency's] file at any point in the proceedings, or that he was aware of its contents." Id. at 44 n.4, 107 S.Ct. 989. And it was not until after the defendant's trial that the statute making the agency's records confidential was amended to allow for disclosure to "law enforcement officials for use in criminal investigations." Id. at 43, 107 S.Ct. 989 n.2. At least one federal appellate court has extended Ritchie to a situation similar to this case, even though the prosecution apparently did not possess or control the records sought. See United States v. Robinson, 583 F.3d 1265, 1270 (10th Cir. 2009) (applying Ritchie to a request for a witness's mental health records from a hospital without mentioning whether the prosecution possessed the records). Other courts have disagreed, holding that Ritchie is inapplicable when the prosecution does not possess the records the defendant seeks. See United States v. Hach, 162 F.3d 937, 947 (7th Cir. 1998).
Even if Blue has a constitutional right to the records, Ritchie does not definitively establish that this right trumps the psychotherapist-patient privilege. As noted above, the state statute in Ritchie contemplated some exceptions, including when a court ordered the agency to produce the records. Ritchie, 480 U.S. at 58, 107 S.Ct. 989. The qualified nature of the statute was critical to the Supreme Court's decision that the state's interest in keeping the records confidential did not prevent "all disclosure in criminal prosecutions." Id. The Supreme Court specifically declined to address whether its holding would have been different if the state statute had protected the agency's "files from disclosure to anyone , including law-enforcement and judicial personnel." Id. at 57, 107 S.Ct. 989 n.14. The alleged victims here are relying on the federal psychotherapist-patient privilege rather than a qualified statute like the one in Ritchie. In Kinder v. White, 609 F. App'x 126 (4th Cir. 2015), the Fourth Circuit rejected the notion that the federal psychotherapist-patient privilege is subject to an exception "where the privileged information is necessary to vindicate a criminal defendant's constitutional rights." Id. at 130 (alterations omitted). The district court in Kinder held that the defendant had a due process right to the mental health records of the prosecution's key witness and that this right outweighed the witness's psychotherapist-patient privilege. Id. The Fourth Circuit disagreed, holding that Jaffee did not allow courts to engage in this sort of balancing analysis. Id. at 130-31. "[N]ow that the psychotherapist privilege has been recognized," the Fourth Circuit reasoned, "it would be both counterproductive and unnecessary for a court to weigh the opponent's evidentiary need for disclosure any time the privilege is invoked." Id. at 131.
Although the Fourth Circuit is the only federal appellate court to address whether the federal psychotherapist-patient privilege must give way to a defendant's constitutional rights, the Eighth Circuit has addressed *869 similar issues, albeit under the deferential standard of review applicable in habeas corpus cases. In Newton v. Kemna, 354 F.3d 776 (8th Cir. 2004), for instance, the petitioner argued that the state trial court had violated the Sixth Amendment's Confrontation Clause when it denied his request for a witness's medical records based on the witness's physician-patient privilege. Id. at 780-81. Acknowledging that the Supreme Court had allowed constitutional rights to trump evidentiary privileges in other circumstances, the Eighth Circuit concluded that "[w]hether a constitutional right might prevail over a privilege seems to be a function of the relative strength of the privilege and the nature of the constitutional right at stake." Id. at 781-82. Because the Eighth Circuit was "unable to discern any transcendental governing principles" that signaled how the Supreme Court would rule on a claim that the witness's physician-patient privilege must yield to the defendant's right to confrontation, it held that the state court's decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent. Id. The Eighth Circuit also held that the federal district court did not abuse its discretion by denying the petitioner's request for discovery or in camera review of the witness's psychiatric records. Id. at 783-84. The Eighth Circuit concluded that the records fell within the federal psychotherapist-patient privilege and rejected the argument that Jaffee allowed for a balancing approach to the privilege. Id. at 784-85. Similar to Newton, the Eighth Circuit in Johnson v. Norris, 537 F.3d 840 (8th Cir. 2008), concluded that it was not an unreasonable application of federal law to hold that a witness's psychotherapist-patient privilege prevailed over the defendant's rights under the Sixth and Fourteenth Amendments. Id. at 846-47. The Eighth Circuit acknowledged that Ritchie and Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), "establish that in at least some circumstances, an accused's constitutional rights are paramount to a State's interest in protecting confidential information" but held that those cases "do not establish a specific legal rule that answers whether a State's psychotherapist-patient privilege must yield to an accused's desire to use confidential information in defense of a criminal case." Johnson, 537 F.3d at 846.
In short, neither Supreme Court nor Eighth Circuit case law provides a clear answer concerning whether Blue has a constitutional right to the alleged victims' records and, if so, when such a right could ever trump the victims' psychotherapist-patient privileges. This Court next turns to the Federal Rules of Criminal Procedure for guidance.
II. Rule 17(c)
Rule 16 of the Federal Rules of Criminal Procedure governs discovery and inspection, but has no provision for issuance of subpoenas. Rule 17(c), which addresses subpoenas for documents and objects, does not give defendants a means of discovery in criminal cases but rather was designed "to expedite the trial by providing a time and place before trial for the inspection and of subpoenaed materials." United States v. Nixon, 418 U.S. 683, 698-99, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) ; see also Bowman Dairy Co. v. United States, 341 U.S. 214, 220, 71 S.Ct. 675, 95 L.Ed. 879 (1951) ("It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest of terms."). The Supreme Court in Nixon explained that the moving party under Rule 17(c) must show that the information sought is relevant, admissible, and requested with adequate specificity. Nixon, 418 U.S. at 700, 94 S.Ct. 3090. A party requesting production *870 before trial must also show that the information is "not otherwise procurable reasonably in advance of trial by exercise of due diligence," that "the party cannot properly prepare for trial without such production," and that "the application is made in good faith and is not intended as a general 'fishing expedition.' " Id. at 699-700, 94 S.Ct. 3090. The Eighth Circuit has applied the Nixon test in criminal cases involving a subpoena duces tecum to a third party, United States v. Bradford, 806 F.3d 1151, 1155 (8th Cir. 2015) ; United States v. Hang, 75 F.3d 1275, 1283 (8th Cir. 1996) ; see also United States v. Rand, 835. F.3d 451, 463-64 (4th Cir. 2016) (holding that the Nixon standard applies to subpoenas to third parties under Rule 17(c) ), and Blue has not argued for a different standard here.
A. Relevance
Blue claims that his defense will be that the alleged victims are falsely accusing him or blaming him for sexual abuse committed by someone else. He contends that the records may show that the alleged victims recanted, made inconsistent allegations against him, or were sexually abused by others. Although evidence suggesting that the alleged victims are falsely accusing Blue would be acutely relevant, the government argues that Blue is merely speculating that the records might contain such information. To be sure, the "specificity and relevance elements" of the Nixon standard "require more than the title of a document and conjecture as to its contents."[4] Hang, 75 F.3d at 1283 (quoting United States v. Arditti, 955 F.2d 331, 345 (5th Cir. 1992) ). This Court has recognized, however, that defendants sometimes struggle to be specific in establishing the relevance and admissibility of DSS or mental health records without truly knowing what the records contain or what the government's evidence will be at trial. In the past, this Court has ordered the production of records for in camera review so that the Court can determine whether the defendant is entitled to the records. The Supreme Court in Nixon did not hold that defendants must establish relevance beyond all doubt. Rather, the Court, after recognizing that the special prosecutor could not "fully" describe the contents of the tapes when it filed the subpoena, held that the prosecutor had shown "a sufficient likelihood that each of the tapes contains conversations relevant to the offenses charged in the indictment." Nixon, 418 U.S. at 700, 94 S.Ct. 3090 ; see also id. (concluding that the overall context of the tapes "permit[ed] a rational inference that at least part of the conversations relate to the offenses charged in the indictment").
Blue has shown a sufficient likelihood of relevance to justify an in camera review at least on the requested records concerning WWK. Some of WWK's records contain allegations that people including but not limited to Blue sexually abused her. Most of the records Blue seeks for WWK relate to the time during which Blue allegedly sexually assaulted her or the two years thereafter. Blue has made a weaker showing of a likelihood of relevance as to the requested Child's Voice and Child Protection Services records concerning AM, just narrowly providing enough information to support a rational inference that such records contain relevant evidence. For example, AM apparently alleged during a July 22, 2016 forensic interview that Blue sexually abused her. Although Blue *871 has the July 22, 2016 interview report, he is seeking an interview of AM that Child's Voice conducted on April 13, 2016. The Child's Voice interview could contain allegations against Blue or show that AM failed to accuse Blue despite having the opportunity to do so.[5] Blue however has not made a showing of relevance regarding DSS records on AM.
Blue has made no showing of relevance as to the records concerning CB, but simply wants those in case she perchance disclosed being sexually abused by someone else or recanted. If the standard of relevance were set so low where a defendant could simply aver a possibility of another perpetrator or recantation, then a criminal defendant facing sexual assault charges could in every case seek in camera review of all sorts of records[6] of the alleged victim. No case authority or rule of criminal procedure, however, entitles a defendant facing a sex charge with such a broad right of discovery.
B. Specificity
Blue has shown enough relevance to warrant an in camera review of some material, but some of his requests are not sufficiently specific. Some of Blue's requests seek all the records an organization has for the alleged victims, without any limits on the time frame or the type of documents sought. Such broad requests smack of a fishing expedition, which Rule 17(c) does not allow. See United States v. Morris, 287 F.3d 985, 991 (10th Cir. 2002) ("Courts have held that requests for an entire file are evidence of an impermissible fishing expedition."). As set forth in the Conclusion below, this Court will narrow certain requests of Blue so that they meet the specificity requirement.
C. Admissibility
The government argues that the records are inadmissible because they are hearsay and protected by the psychotherapist-patient privilege. If Blue is right about the content of certain records, such records could potentially be admissible as impeachment evidence. After all, CB, WWK, and AM will almost certainly testify at trial. When they do, certain of their statements contained in the records could become admissible as prior inconsistent statements. See Fed. R. Evid. 613(b). Unfortunately for Blue, the Supreme Court in Nixon stated that "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." 418 U.S. at 701, 94 S.Ct. 3090. The rationale for this rule is that "the admissibility prong of Rule 17(c) cannot be fully assessed until the corresponding witness testifies." United States v. LaRouche Campaign, 841 F.2d 1176, 1180 (1st Cir. 1988). However, "where a defendant has identified evidence that would be admissible for impeachment but not otherwise, several courts have ordered the items produced for in camera inspection so that the court may review the material and disclose it, if ever, when it becomes ripe for impeachment." United States v. Reyes, 239 F.R.D. 591, 601 (N.D. Cal. 2006) ; see also LaRouche Campaign, 841 F.2d at 1180 (holding that it was proper to disclose impeachment evidence before trial because the "putative key witness, whose general testimony is already known, is scheduled to testify"); United States v. King, 194 F.R.D. 569, 574-75 (E.D. Va. 2000) (ordering *872 pretrial production of evidence where it was clear that the evidence would be useful for impeachment and it was "known with certainty" that the witness would testify). Pretrial in camera review is the appropriate course here, where the three alleged victims will be testifying, the content of their testimony is generally known, the records might reasonably contain impeachment evidence, and such review will aid in trial preparation and avoid unnecessary delay.
In camera review is also the best approach to resolving the psychotherapist-patient privilege issue under these circumstances. As noted above, this Court has limited information about the records. Although the party asserting the privilege has the burden of proving its applicability, the only information the government has offered is a statement in its brief that Blue "seeks records regarding treatment." Doc. 39 at 2. Some of the records sought by Blue appear to be privileged while others do not. Under these circumstances, in camera review will allow this Court to determine with certainty which records fall within the privilege. In camera review is also the safest approach given the uncertainty about whether Blue has any constitutional right to the records and whether this right is paramount to the psychotherapist-patient privilege. If the records do not contain the evidence Blue seeks, this Court need not disclose the records to Blue and the records will remain confidential from him.
This Court recognizes, of course, that any review of the records may seem invasive to the alleged victims. At least one district court has held that ordering the production of mental health records for in camera review is itself a violation of the psychotherapist-patient privilege. United States v. Doyle, 1 F.Supp.2d 1187, 1191 (D. Or. 1998). However, other courts have ordered that mental health records sought in a subpoena be produced for in camera review despite a claim that the records are subject to the psychotherapist-patient privilege. United States v. Chee, No. 2:14-CR-00033-KJD-CWH, 2016 WL 3397683, at *6 (D. Nev. June 14, 2016) ; United States v. Alperin, 128 F.Supp.2d 1251, 1254-55 (N.D. Cal. 2001). This Court will order that certain records be produced for an in camera review so that the Court can rule on Blue's motion and the privilege asserted by the alleged victims. These records will not be disclosed to anyone else until a further ruling by this Court.
However, additional records that a boy with the initials J.B. had sexual contact with WWK at Crow Creek Middle School will not be admissible at trial and need not be subpoenaed. Blue already has information about the incident to use if WWK or the government suggests that WWK would not have knowledge of sexual activity lest she was so assaulted by Blue. Rules 403 and 412 otherwise render evidence about J.B.'s sexual contact with WWK inadmissible.
D. Conclusion
For the reasons above, it is hereby
ORDERED that Blue's Motion for Alleged Victim Records, Doc. 36, is denied as to additional records on CB but otherwise granted in part. It is further
ORDERED that the Clerk of Court issue a subpoena duces tecum to the South Dakota Department of Social Services, 700 Governors Drive, Pierre, South Dakota, 57501, for production of all records concerning WWK for the period of January 1, 2012 to date for furnishing of such records to the Court for an in camera review. It is further
ORDERED that the Clerk of Court issue a subpoena duces tecum to St. Joseph's Indian School, 1301 N. Main Street, *873 Chamberlain, South Dakota, 57325, for production of reports prepared by Dr. Christenson and Psychiatrist Sherry Langle concerning WWK for furnishing of such records to the Court for in camera review. It is further
ORDERED that the Clerk of Court issue a subpoena duces tecum to the Chamberlain Academy, 211 W. 16th Ave., Chamberlain, South Dakota, 57325, for production of all records concerning WWK for the period of January 1, 2012 to date for furnishing of such records to the Court for an in camera review. It is further
ORDERED that the Clerk of Court issue a subpoena duces tecum to Our Home, 334 Third Street SW, Huron, South Dakota, 57350, for production of all records concerning WWK for the period of January 1, 2012 to date for furnishing of such records to the Court for an in camera review. It is further
ORDERED that the Clerk of Court issue a subpoena duces tecum to the New Beginnings Center, 1601 Milwaukee Ave. NE, Aberdeen, South Dakota, 57401, for production of all records concerning WWK for the period of January 1, 2012 to date for furnishing of such records to the Court for an in camera review. It is further
ORDERED that the Clerk of Court issue a subpoena duces tecum to the Abbott House, 909 Court Merrill, Mitchell, South Dakota, 57301, for production of all records concerning WWK for the period of January 1, 2012 to date for furnishing of such records to the Court for an in camera review. It is further
ORDERED that the Clerk of Court issue a subpoena duces tecum to Child's Voice, 1305 W. 18th Street, Sioux Falls, South Dakota, 57105, for production of all records concerning the exam Child's Voice performed for AM on April 13, 2016, for furnishing of such records to the Court for an in camera review. It is further
ORDERED that the Clerk of Court issue a subpoena duces tecum to Child Protection Services, 320 Sorensen Drive, Chamberlain, South Dakota, 57325-1022, for production of all records concerning AM being taken into protective custody on April 13, 2016, for furnishing of such records to the Court for an in camera review.

This Court has encountered and ruled on similar requests in sexual abuse cases in the past, but all such opinions and orders are sealed. There is a paucity of published opinions on issues such as raised here. This Court gave the parties 14 days from the filing of a sealed opinion and order to advise if they object to a redacted, unsealed version of this opinion and order being issued. Neither party has objected and the time for doing so has passed.

Blue does not argue that the government lacks standing to assert the psychotherapist-patient privilege for WWK. The Crime Victims' Rights Act (CVRA) arguably gives the government a basis for doing so. Rule 17(c)(3) was added in 2008 to implement that provision of the CVRA giving crime victims the "right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8) ; Fed. R. Grim. P. 17 advisory committee's note to 2008 amendment. Another provision of the CVRA states that the "attorney for the Government may assert the rights described in" § 3771(a). 18 U.S.C. § 3771(d)(1). Regardless of this provision of the CVRA, the government should still notify this Court once it reaches WWK whether she is raising the psychotherapist-patient privilege.

The Court noted that "compulsory process provides no greater protections in this area than those afforded by due process," but held that it did not need to decide "whether and how the guarantees of the Compulsory Process Clause differ from those of the Fourteenth Amendment." Ritchie, 480 U.S. at 56, 107 S.Ct. 989

Some academics have criticized this quote as interpreting Nixon too strictly. See Kenneth M. Miller, Nixon May Have Been Wrong, but it is Definitely Misunderstood (or, A Federal Criminal Defendant's Pretrial Subpoenas Duces Tecum Properly Reaches Potentially Admissible Evidence), 51 Willamette L. Rev. 319, 335 (2015).

The record is unclear as to when Blue allegedly sexually abused AM.

Blue's speculation that counseling or DSS records could reveal another perpetrator or recantation, if enough to show "relevance," could lead to defendants seeking all of a sexual assault victim's emails, texts, and social media posts on the premise that those could reveal another perpetrator or recantation.